IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

LUFKIN DIVISION

| COREY JOSEPH SCHUFF | § | |
|---|---|---|
| VS. | § | CIVIL ACTION NO. 9:19-cv-146 |
| JOSHUA PERKINS, ET AL. | § | |

<u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff Corey Joseph Schuff, an inmate confined within the Texas Department of Criminal Justice, Correctional Institutions Division,  brings this civil rights lawsuit against Joshua Perkins, James Bush and Mark Duff.[1]  Plaintiff alleges Defendant Perkins used excessive force against him and that Defendant Bush retaliated against him.  He also alleges Defendant Duff denied him due process of law.

Defendants filed a Motion for Summary Judgment (doc. #100).  Plaintiff filed a Response (doc. #101).  The Motion is therefore ripe for consideration.

<u>Factual Allegations</u>

In his Complaint (doc. #1), Plaintiff states that on May 24, 2018, a group of inmates were released from 7 building, where Plaintiff was housed, to go to the unit cafeteria.  Plaintiff was part of the group and the last inmate to leave 7 building.  He alleges that as the group was walking down the hallway in 7 building, Defendant Joshua Perkins, a correctional officer, ordered the group to walk on the left side of the walkway.  Defendant Perkins gave the order because inmates were out in the recreation yard, which is to the right of the hallway.

Plaintiff alleges that while he was walking down the left side of the walkway, inmate Dale Ryman yelled at him from his cell, which was off the left side of the walkway.  Plaintiff stopped to see what Mr. Ryman needed.  Plaintiff states that when he stopped and turned to face Mr. Ryman's cell, Defendant Perkins came up behind him and roughly grabbed him by the arm. When Plaintiff

---

[1]  Pursuant to 28 U.S.C. § 636(c)(1), the parties consented to having a United States Magistrate Judge conduct all further proceedings and order the entry of judgment (doc. #62).

turned to see who had grabbed him, Defendant Perkins got directly in Plaintiff's face and began yelling incoherently.

Plaintiff states he remained calm. He told Defendant Perkins to "slow down" and to take his hands off him. Defendant Perkins then yelled that Plaintiff was not going to eat and that he should go back to where he had been. After releasing Plaintiff's arm, Defendant Perkins shoved him in the chest using both hands. As Plaintiff went backwards, he lost his balance and almost fell down. Plaintiff states that as he leaned forward to catch his balance, Defendant Perkins punched him in the mouth with a closed fist.

Plaintiff asserts that at this point, he understood that if he did not defend himself he would be in great danger. Plaintiff then punched Defendant Perkins. After being punched, Defendant Perkins rushed Plaintiff and pinned him to the fence separating the walkway from the recreation yard. While Plaintiff was pinned to the fence, Defendant Perkins punched him in the mouth and stomach. Plaintiff states he attempted to get Defendant Perkins off him. However, Defendant Perkins grabbed him and threw him down on the concrete walkway face first. Plaintiff alleges his mouth was busted that two front teeth were broken.

Plaintiff states that while he was on the ground, Defendant Perkins climbed on his back. Plaintiff then stood up with Defendant Perkins on his back. Other officers then arrived and jumped on Plaintiff as he remained on the ground.

Plaintiff was then taken to the infirmary and examined. He was subsequently taken to 12 building and placed in pre-hearing detention.

On May 29, Plaintiff received notice that he had been charged with the disciplinary offense of assaulting a staff member. Plaintiff states that on May 31, he filed a grievance complaining that Defendant Perkins used unnecessary force against him.

On June 1, Plaintiff was given some of his personal property and taken to see a dentist. He states his property was left in his cell when he was taken to the dentist. His property included an inventory sheet listing all the property that had been removed from his original cell. The inventory

2

had been conducted by Defendant Bush, a correctional officer, who was supposedly the officer who removed the property from the original cell.  The inventory sheet, which is signed by Defendant Bush and dated May 24, 2018,  also listed property stored in the unit's property room.  The inventory sheet did not list Plaintiff's appliances and some other property he had purchased over the years.  Plaintiff alleges this property was either misplaced or destroyed by Defendant Bush in retaliation "for being the victim [of] this misuse of force."

On June 4, a disciplinary hearing was conducted.  At the conclusion of the hearing, Plaintiff was found guilty.  He was placed on recreation and commissary restriction for 45 days and required to forfeit 364 days of previously earned good conduct time credits.

Plaintiff also alleges that while he was in pre-hearing detention and before his disciplinary conviction, Defendant Duff, the chief of classification, placed a Security Precaution Designator ("SPD") on Plaintiff's file.  He states that as a result of the designation, he will not be allowed back into general population for at least 10 years, during which time his movements and freedom will be severally restricted.

<u>The Motion for Summary Judgment</u>

In their Motion for Summary Judgement, Defendants assert that to the extent Plaintiff seeks declaratory and injunctive relief, his claims are moot because he has been transferred to another prison unit.  To the extent Plaintiff seeks money damages, Defendants Bush and Duff assert they are entitled to summary judgement based on the defense of qualified immunity.  In addition, Defendant Perkins asserts the claim against him is barred by the doctrine established in *Heck v. Humphrey*, 477 U.S. 512 (1994).

<u>Standard of Review</u>

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Ellison v. Software Spectrum, Inc.*, 85 F.3d 187, 189 (5th Cir. 1996).  A dispute about a

3

material fact is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

At the summary judgment stage of the proceedings, "[t]he moving party has the burden of proving there is no genuine [dispute] of material fact and that it is entitled to judgment as a matter of law." *Rivera v. Houston Indep. Sch. Dist.*, 349 F.3d 244, 246 (5th Cir. 2003); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party satisfies this burden, "the non-moving party must show that summary judgment is appropriate by setting forth specific facts showing the existence of a genuine issue concerning every component of its case." *Rivera*, 349 F.3d at 247. The nonmovant's burden at this stage "is not satisfied with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." *Willis v. Roche Biomedical Labs., Inc.*, 61 F.3d 313, 315 (5th Cir. 1995); *Brown v. Houston*, 337 F.3d 539, 541 (5th Cir. 2003). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

<u>Analysis</u>

*Qualified Immunity*

The doctrine of qualified immunity affords protection against individual liability for civil damages to officials "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002). Evaluating qualified immunity is a two-step process. *Wyatt v. Fletcher*, 718 F.3d 496, 502 (5th Cir. 2013). First, the court must determine whether a plaintiff's allegations, if true, establish a constitutional violation. *Hope*, 536 U.S. at 736. Then, if a constitutional right was violated, the court must determine whether the right was clearly established at the time of the violation. *Freeman v. Tex. Dep't of Crim. Just.*, 369 F.3d 854, 863 (5th Cir. 2004). A specific right is clearly established only if its contours "are sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Wooley v. City of Baton Rouge*, 211 F.3d 913,

919 (5th Cir. 2000).  A defendant in a Section 1983 lawsuit is entitled to qualified immunity either when the constitutional right being asserted was not violated or the allegedly violated right was not clearly established at the time of the claimed violation.  *Benfield v. Magee*, 945 F.3d 333, 337 (5th Cir. 2019).

"A qualified immunity defense alters the usual summary judgment burden of proof."  *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010).  Once government officials assert the defense of qualified immunity, the burden shifts to the plaintiff to "rebut the defense by establishing that the allegedly wrongful conduct violated clearly established law and that genuine issues of material fact exist regarding the reasonableness" of the conduct.  *Gates v. Tex. Dep't of Protective & Regul. Servs.*, 537 F.3d 404, 419 (5th Cir. 2008).

*Retaliation*

Plaintiff contends Defendant Bush misplaced or destroyed his property in retaliation "for being the victim [of] a misuse of force."  "An action motivated by retaliation for the exercise of a constitutionally protected right is actionable, even if the act when taken for a different reason might have been legitimate."  *Woods v. Smith*, 60 F.3d 1161, 1165 (5th Cir. 1995).  This includes a prisoner's First Amendment right to file grievances concerning his treatment, as retaliation has the potential to discourage a prisoner from exercising that right.  *Morris v. Powell*, 449 F.3d 682, 686 (5th Cir. 2006).  However, retaliation is actionable only if the retaliatory act "is capable of deterring a person of ordinary firmness from further exercising his constitutional rights."  *Bibbs v. Early*, 541 F.3d 267, 270 (5th Cir. 2008).

To establish a retaliation claim, an inmate must prove: (1) he was exercising a specific constitutional right; (2) a defendant intended to retaliate against the inmate for exercising that right; (3) a retaliatory adverse act by a defendant and (4) causation.  *Morris*, 449 F.3d at 684.  Conclusory allegations regarding motive are insufficient to establish a retaliation claim.  *Woods*, 60 F.3d at 1166).  The inmate must either produce direct evidence of motivation or allege a chronology of

Case 9:19-cv-00146-CLS   Document 106   Filed 11/01/23   Page 6 of 11 PageID #:  787


events from which retaliation may plausibly be inferred.  *Allen v. Thomas*, 388 F.3d 147, 149 (5th Cir. 2004).

In his Response, Plaintiff asserts that Defendant Bush, having just gotten into an altercation with Plaintiff, would have been irritated with Plaintiff.  Further, Defendant Bush, having heard Plaintiff filed a grievance concerning the use of force, would likely not have taken care of Plaintiff's property as carefully as he would have if a grievance had not been filed.

Plaintiff's allegations regarding retaliation fail to demonstrate Defendant Bush acted with a retaliatory motive.  As stated above, establishing a retaliatory motive requires either direct evidence of motivation or a chronology of events from which a retaliatory motive may be plausibly inferred.  Plaintiff has put forth no direct evidence of a retaliatory motive.

Nor has Plaintiff alleged a chronology of events from which retaliation may be plausibly inferred.  Plaintiff states that when Defendant Bush filled out an inventory sheet concerning Plaintiff's property, he failed to list  appliances and other property Plaintiff had purchased while in prison.  Plaintiff alleges property that was not listed was misplaced or destroyed by Defendant Bush. The inventory sheet is dated  May 24, the date of the physical altercation between Plaintiff and Defendant Perkins.  Plaintiff asserts the actions taken by Defendant Bush were in retaliation for a grievance Plaintiff filed concerning the use of force.  But Plaintiff 's grievance is dated May 25,[2] after Defendant Bush prepared the inventory sheet that allegedly did not list all of Plaintiff's property.[3]  Based on the chronology described by Plaintiff, his grievance could not have caused Defendant Bush to improperly complete the inventory and misplace or destroy the property that was deliberately not listed.

---

[2]  Plaintiff states he filed the grievance on May 31.  However, the grievance is dated May 25 (doc. #101-3 at  23).

[3]  In addition, Plaintiff's allegations fail to show how Defendant Bush was aware a grievance had been filed.

Alternatively, Plaintiff states Defendant Bush acted in retaliation for being involved in an altercation with Plaintiff. However, Plaintiff's allegations regarding the use of force do not state Defendant Bush was a participant. Further, a claim of retaliation must be based on the exercise of a specific constitutional right. Plaintiff cites no authority establishing he had a constitutional right to engage in a use force with a correctional officer.

Plaintiff's allegations do not establish a chronology of events from which a retaliatory motive may be plausibly inferred. Accordingly, there is no genuine issue of material fact as to whether the actions of Defendant Bush violated Plaintiff's constitutional rights. Defendant Bush is therefore entitled to summary judgment based upon qualified immunity.

*Denial of Due Process of Law*

Plaintiff alleges Defendant Duff denied him due process of law by placing an SPD in his file before his disciplinary conviction. Defendant Bush contends he is entitled to summary judgment because Plaintiff did not have a protected liberty in not receiving an SPD before a disciplinary conviction. Plaintiff argues that in light of the length of time the SPD will remain a part of his file, and in light of the restrictions he will be subject to as a result of the SPD, he has a protected liberty interest in not receiving an SPD prior to a disciplinary conviction.

Attached to Plaintiff's Response is an Affidavit from Timothy Fitzpatrick, the Director of Classification and Records for the Texas Department of Criminal Justice ("TDCJ"), which provides details concerning the placement and effect of an SPD. Mr. Fitzpatrick states, in part, as follows:

> SPD Classification Codes were implemented in 2003 and are governed by Administrative Directive 04.11 (AD-04.11). Under AD-04.11, TDCJ assigns each inmate to a custody designation that provides for appropriate, adequate supervision and housing consistent with the inmate's needs. Certain behaviors warrant special consideration; therefore, serious behavioral infractions shall be identified and communicated with staff to ensure that inmates receive the appropriate levels of supervision. Under AD-04.11, "[a] 'Security Precaution Designator' (SPD) is a code documented in an offenders's record that identifies the offender as a special management risk."
>
> The policy dictates that an SPD shall be placed in the record of an inmate sentenced to life without parole or found to have engaged in escape, taking a hostage, staff assault resulting in serious injury, or defeating restraining devices. The SPD placement can be recommended by a sociologist, an intake interviewer, the Unit

Classification Committee (UCC), or central administration staff. The warden or designee has the authority to place an SPD in an inmate's record, housing area, or on the inmate's cell door at any time he determines a security risk exists.  If the warden authorizes the SPD, then the SPD shall be reviewed at the next UCC hearing.

Removal of the SPD by the Security Precaution Designator Review Committee (SPDRC) may occur if it meets the criteria outlined in AD-04.11.  The committee is generally comprised of the Regional Director, Warden, and the Chairman of Classification and Records.  The UCC makes the initial recommendation for SPD removal, which is then forwarded to the SPDRC for review. If it has been more than 10 years since the incident that caused the placement of the SPD . . . and the inmate is no longer considered an immediate security risk, the SPD shall be removed unless extraordinary circumstances exist.  The AD-04.11 policy provides that an inmate can request a review of the SPD by the UCC once every 12 months.  If an inmate disagrees with the result of the UCC hearing, he may seek relief through grievance procedures.

(Doc. #101-3 at 1-2.).

In *Sandin v. Conner*, 515 U.S. 472, 484 (1995), the Supreme Court held that liberty interests protected by the Due Process Clause will generally be limited to freedom from restraints which are found to impose an atypical and significant hardship on a prison inmate in relation to the ordinary incidents of prison life.  As a general rule, only sanctions which result in the loss of good conduct credits will impose upon a liberty interest.  *Orellana v. Kyle*, 65 F.3d 29, 31-33 (5th Cir. 1995). Placement in more restrictive housing, such as administrative segregation, generally does not implicate a constitutionally cognizable liberty interest.  *Luken v. Scott*, 71 F.3d 192, 193 (5th Cir. 1995).

The claim asserted by Plaintiff in this case is similar to the claim asserted by the plaintiff in *Lee v. Karriker*, 383 F. App'x 491 (5th Cir. 2010).  In *Lee*, the plaintiff complained that placing an SPD in his prison file before he received a disciplinary hearing violated his right to due process of law.  The United States Court of Appeals for the Fifth Circuit disagreed.  The court, citing *Sandin*, stated that the plaintiff's claim did not implicate the deprivation of a constitutional right.  383 F. App'x at 492.

*Lee* indicates that Plaintiff's allegations against Defendant Duff fail to establish a constitutional violation.  Further, Plaintiff cites no authority establishing that at the time of the actions taken by Defendant Duff, an inmate's right to not have an SPD placed in his file prior to a

8

disciplinary hearing was clearly established such that a reasonable official would have understood that Defendant Duff's actions violated the Constitution.  As a result, Defendant Duff is entitled to summary judgment based on the defense of qualified immunity.

*Excessive Use of Force*

As stated above, Defendant Perkins contends the excessive use of force claim against him is barred by the doctrine established in *Heck v. Humphrey, supra*.  Under *Heck*, a plaintiff is barred from bringing a Section 1983 lawsuit if success on his claim would imply the invalidity of his conviction or sentence or the duration of his confinement.  512 U.S. at 487.  A plaintiff may only bring a Section 1983 claim if the prior conviction has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal, or called into question by a federal court's issuance of a writ of habeas corpus.  *Id*. at 486-87.

*Heck* applies to a prison disciplinary conviction that results in a change in a prisoner's sentence, including the loss of good-time credits.  *Gray v. White*, 18 F.4th 463, 467 (5th Cir. 2021).  A disciplinary conviction which results in the loss of good conduct time credits is a conviction for the purposes of *Heck*.  *Santos v. White*, 18 F.4th 472, 475 (5th Cir. 2022).  As a result, *Heck* precludes Section 1983 litigation in the prison disciplinary context if a finding in the plaintiff's favor would imply the invalidity of a disciplinary conviction resulting in the loss of good conduct time credits.  *Gray*, 18 F.4th at 467.

However, *Gray* and *Santos* involved inmates in the Louisiana state prison system.  Here, Plaintiff is incarcerated within the Texas state prison system, where some inmates are eligible for release on mandatory supervision, while others, like Plaintiff, are not.[4]  Inmates who are eligible for release on mandatory supervision are generally to be released when their time served, in addition to the good conduct credits they have earned, equals the length of their sentence.  *Madison v. Parker*, 104 F.3d  765, 768 (5th Cir. 1997).  However, inmates who are ineligible for release on

---

[4] Plaintiff is incarcerated as a result of a conviction for murder (doc. #101 at 10).  Pursuant to Section 508.149(a)(2) of the Texas Government Code, a Texas inmate who was convicted of murder is not eligible for release on mandatory supervision.

9

mandatory supervision are not entitled to be released under such circumstances.  As Plaintiff is not eligible for release on mandatory supervision, there is an issue as to whether a finding in Plaintiff's favor would necessarily imply the invalidity of the duration of his confinement.

As Defendant Duff acknowledges, district courts in Texas have held that the *Heck* bar does not apply where the plaintiff is a Texas inmate who is not eligible for release on mandatory supervision.  *Dillard v. Davis*, 2022 WL 3045747, No. 7:19cv00081, at *8 (N.D. Tex. June 17, 2022); *Yarborough v. Loftis*, No. 6:14cv950, 2017 WL 9288033 at, *3 (E.D. Tex. Oct. 18, 2017). These holdings are based on the conclusion that where an inmate is not eligible for release on mandatory supervision, a finding in the inmate's favor would not imply the invalidity of the duration of his confinement.

The court agrees with this reasoning.  As Plaintiff is not eligible for release on mandatory supervision, and is therefore not entitled to be released when his time served plus the good conduct time credits he has earned equal his sentence, a finding in his favor in this action would not imply the invalidity of the duration of his confinement.  A finding in Plaintiff's favor would not necessarily imply that he should be released earlier than would otherwise be the case.  Accordingly, *Heck* does not bar Plaintiff's excessive use of force claim.[5]  Defendant Perkins is therefore not entitled to summary judgment.

### *Request for Injunctive and Declaratory Relief*

Plaintiff complains of events which occurred at the Polunsky Unit.  By the time he filed his lawsuit, he has been transferred to the Darrington Unit.  Plaintiff's transfer to the Darrington Unit rendered his request for declaratory and injunctive relief moot.  *Herman v. Holiday*, 238 F.3d 660,

---

[5]  The court notes that *Johnson v. Livingston*, 360 F. App'x 531 (5th Cir. 2010), like the case now before the court, involved a Texas inmate who lost good conduct time credits and was not eligible for release on mandatory supervision.  The plaintiff challenged the result of a prison disciplinary conviction in a Section 1983 lawsuit.  The United States Court of Appeals for the Fifth Circuit held that the plaintiff's claim was barred by *Heck*.  360 F. App'x at 532.  However, the court did not consider what effect the plaintiff's ineligibility for release on mandatory supervision might have had on his claim.  That issue was apparently not presented to the court.  As a result, the court's holding did not squarely address the issue now presented here.

664 (5th Cir. 2001).  Defendants are therefore entitled to summary judgment with respect to Plaintiff's request for declaratory and injunctive relief.

<u>ORDER</u>

For the reasons set forth above, there is no genuine issue of material fact with respect to the claims against Defendants Duff and Bush and these Defendants are entitled to judgment as a matter of law.  The Motion for Summary Judgment is **GRANTED** with respect to the claims against Defendants Duff and Bush, as well as with respect to Plaintiff's request for declaratory and injunctive relief.  The Motion for Summary Judgment is **DENIED** with respect to the claim against Defendant Perkins.

**SIGNED this the 1st day of November, 2023.**

_____
Christine L Stetson
UNITED STATES MAGISTRATE JUDGE